Mark W. Edelstein
California State Bar Number 197778
Law Offices of Mark W. Edelstein
2825 E. Tahquitz Canyon Way, Suite D1
Palm Springs, CA 92262
(760) 320-2804; fax (760) 645-6235
*mark.edelstein@feflaw.com*

Counsel for Plaintiff, Clyde DeWitt

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLYDE DeWITT, a natural person,<br><br>    Plaintiff,<br><br>v.<br><br>LAWRENCE A. PALCOVIC, and DIANE C. PALCOVIC, natural persons,<br><br>    Defendants. | **Case No. 2:14-cv-06894-MWF-MAN**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. Equitable Indemnification;**<br><br>**2. Intentional Infliction of Emotional Distress;**<br><br>**3. Negligent Infliction of Emotional Distress;**<br><br>**4. Negligence;**<br><br>**5. Nuisance.** |

COMES NOW Plaintiff, Clyde DeWitt, by and through his undersigned counsel, no responsive pleading having been served, Fed. R. Civ. Proc. 15(a)(1)(B) and, based upon knowledge of Plaintiff's on acts and information and belief as to the acts of others, alleges:

## SUMMARY

Defendants, husband and wife, are former residential neighbors of Plaintiff in Los Angeles. Years ago, Defendants allowed rats to proliferate on their residential property. Plaintiff and other neighbors complained to the health-regulating authorities, resulting in abatement of the problem.

Beginning in 2007, Plaintiff gradually relocated to Las Vegas, Nevada, ultimately selling his property in 2012 to a new owner after several years of not occupying the property very often.

After the sale, the new owners discovered that the Defendants' rat infestation had recurred, demanding arbitration and damages against Plaintiff. As a consequence, Plaintiff was required to retain counsel, negotiate a settlement and pay $50,000 to the new owner; became indebted to Plaintiff's counsel; and suffered severe emotional distress.

Allowing rats to proliferate on one's property is easily preventable; and Defendants wilfully and knowing declined to do so. Rather, Defendants believe that rats should be allowed to proliferate, to the detriment of the community, which is clearly outrageous conduct that is malicious and oppressive.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a resident, domicile and citizen of the state of Nevada; all defendants are residents, domicile and citizens of the state of California; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because both defendants are residents, domiciles and citizens of this district.

---

## PARTIES

3. Plaintiff Clyde DeWitt ("Plaintiff") is a resident, domicile and citizen of Clark County, Nevada. Although he once was a resident, domicile and citizen of California, he has not been since November of 2011, long before this action was filed.

4. Defendants Lawrence A. Palcovic ("Defendant Larry"), and Diane C. Palcovic ("Defendant Diane") (collectively, "Defendants") are residents, domiciles and citizens of Los Angeles County, California. Specifically, they reside at 6366 West 81st Street, Los Angeles, CA 90045 ("Defendants' Property") and have resided there since before 1992.

## FACTS COMMON TO ALL CLAMS FOR RELIEF

5. In or about April of 1992, Plaintiff leased and began to occupy premises at 6372 West 81st Street, Los Angles, California 90045 (the "Plaintiff's Former Property"), along with Michelle McNair (now Michelle Williams, here "Ms. McNair"), along with her three children.

6. Defendants' Property is adjacent to Plaintiff's Former Property, immediately to the east.

7. Plaintiff's Former Property and Defendants' Property each are located in a single-family, residential zone in the city of Los Angeles, California.

8. In June of 1996, Plaintiff purchased the Plaintiff's Former Property from his then-landlord.

9. Not long after Plaintiff, Ms. McNair and her children first occupied the Subject Property, in 1992, Plaintiff, Ms. McNair and her children noticed rats on Defendants' Property. Plaintiff called attention to that to Defendant Diane about the rats, explaining that Plaintiff intended to engage a pest-control company to mitigate

the rats. Defendant Diane said to Plaintiff something to the effect of, "You aren't going to kill the rats, are you?" Defendants are in favor of the principles of PETA (People for the Ethical Treatment of Animals) and do not believe that rats are pests.

10. Ms. McNair moved from the Subject Property by the mid- to late-1990s.

11. By 2001, the only residents of the Subject Property were Plaintiff and Cherie Lee Williams, with whom Plaintiff has resided ever since and to whom Plaintiff is now engaged to be married.

12. At some point in the early 2000s, the Defendants' rat problem became intense. Plaintiff and other residents of the neighborhood discussed the problem; and those involved in the discussion all agreed that something needed to be done to remedy the problem. As a result, one or more of those residents entered a complaint about the problem to the appropriate agency of the City of Los Angeles.

13. In response, the City of Los Angeles dispatched a representative to investigate. As a result of that investigation, the City of Los Angeles required that Defendants take measures to abate the Defendants' rat problem. Over a period of a few months, the Defendants' rat problem appeared to Plaintiff and to all of the other neighbors to be entirely abated.

14. In December of 2006, Plaintiff first leased a residence in Clark County, Nevada. Beginning in the spring of 2007, Plaintiff, an attorney, opened a second law office there and began spending increasing percentage of his time there, although maintaining an office in Santa Monica, California.

15. In October of 2009, Plaintiff purchased a residence in the City of Las Vegas (Clark County) and became a resident, citizen and domicile of Nevada.[1]

---

[1] This included obtaining a Nevada drivers license, registering his vehicles in Nevada and becoming a Nevada voter.

**Page 4**

FIRST AMENDED COMPLAINT

Case No. 2:14-cv-06894-MWF-MAN

C:\K-Drive\Files\DeWitt v. Palcovic\2015-002 - First Amended Complaint.wpd

16. After that, Plaintiff spent a decreasing amount of time in Plaintiff's Former Property, closing his California office in August of 2010.

17. In August of 2012, Plaintiff listed Plaintiff's Former Property for sale. Shortly thereafter, Plaintiff's Former Property was subject to a sale contract with a buyer, consisting of four individuals, all in one family (the "Buyers").

18. Not long after the Buyers took possession of Plaintiff's Former Property, they complained to their real estate brokers that there were rats on Defendants' Property. Thereafter, the Buyers retained an attorney who sent to Plaintiff a demand letter, claiming that his clients, the Buyers, sustained at least $150,000 in damages because of rats on Defendants' property. Under the circumstances alleged by the Buyers, rescission of the entire sale of Plaintiff's Former Property was a potential remedy, which would have forced Plaintiff into bankruptcy.

19. Plaintiff tendered the claim to his insurance carrier, there being three policies that he believed potentially covered the claim. The carrier declined coverage with respect to all three policies.

20. Plaintiff therefore was required to retain an attorney to defend the claim. After protracted negotiations, the claim was settled for $50,000, considerably below the original offer to compromise.

21. Plaintiff remains indebted to that attorney for the amount of his fees.

22. From the time Plaintiff learned of the above rat problem and increasingly after the claim was served on Plaintiff until it was settled, some eight months later, Plaintiff suffered severe emotional distress. As an attorney, Plaintiff was aware of the fact that one of the potential remedies that the Buyers could seek was rescission, which would have bankrupted Plaintiff. Further, the claims included one for punitive

damages, which are not dischargable in bankrupcy and fraud, which could have impacted Plaintiff's three law licenses (Nevada, California and Texas).

23. All of the foregoing damages were directly caused by the fact that Defendants intentionally, knowingly, willingly allowed rats to exist and bread on Defendants' property in violation of the rights of Plaintiff, the Buyer and the other neighbors, as well as in violation of the law.

24. Defendants' conduct constituted malice and oppression as those terms are defined and understood in connection with California Civil Code section 3294. Punitive damages are particularly warranted to deter individuals from destroying the good character of neighborhoods by not just allowing, but encouraging invasive pests.

## FIRST CLAIM FOR RELIEF
### (Equitable Indemnification)

25. The allegations in the all of the previous paragraphs of this Complaint are re-alleged as if fully set forth here.

26. Defendants, and each of them, have an equitable duty to indemnify Plaintiff,, for the costs incurred by Plaintiff in defending and settling the claim described above by the Buyers of Plaintiff's Property, including but not limited to a $50,000 settlement and an estimated $10,000 in attorneys that Plaintiff was required to expend defending that aforesaid claim.

## SECOND CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

27. The allegations in the all of the previous paragraphs of this Complaint are re-alleged as if fully set forth here.

28. The above-alleged actions of Defendants, and each of them, were extreme and outrageous. Specifically, Defendants, and each of them, through the extreme and outrageous actions and conduct as alleged hereinabove intended to cause, or recklessly disregarded the probability of causing, severe emotional distress to Plaintiff and others.

29. Plaintiff suffered severe and extreme emotional distress and as an actual and proximate result of Defendants' intentional, malicious, extreme and outrageous conduct, all to Plaintiff's general and special damage, in sums to be proven at trial. This includes a direct and proximate resulting loss of revenue in Plaintiff's solo law practice of over $200,000.

30. Further, the above-alleged conduct of each Defendant constituted despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

31. The allegations in the all of the previous paragraphs of this Complaint are re-alleged as if fully set forth here.

32. The above-alleged actions of Defendants, and each of them, were negligent and proximately caused as alleged hereinabove severe emotional distress and damages to Plaintiff.

/
/
/

## FOURTH CLAIM FOR RELIEF

### (Negligence)

33. The allegations in the all of the previous paragraphs of this Complaint are re-alleged as if fully set forth here.

34. Defendants and each of them had a duty both according to statute, ordinances and public policy to maintain Defendants' Property free of pests.

35. Defendants and each of them violated the aforesaid duties by creating an environment and encouraging the proliferation of rats on Defendants' Property and risking the proliferation of rats in the surrounding areas, including Plaintiffs' Former Property.

36. Defendants and each of them proximately caused damage to Plaintiff by reducing the value of Plaintiff's Former Property as a direct and proximately of the above conduct.

## FIFTH CLAIM FOR RELIEF

### (Nuisance)

37. The allegations in the all of the previous paragraphs of this Complaint are re-alleged as if fully set forth here.

38. The conduct of Defendants and each of them as alleged above constuted a public and private nuisance that directly and proximately caused damages to Plaintiff as alleged above.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment as follows:

1  (a) On the first claim for relief, a declaration that Defendants must indemnify Plaintiff for all losses and damages alleged herein;

(b) On the First Claim for Relief, damages of at least $60,000;

(c) On each of the Second, Third Fourth and Fifth Claims for Relief, compensatory damages in excess of two hundred sixty thousand dollars ($260,000.00), according to proof;

(d) On each of the Second, Third Fourth and Fifth Claims for Relief, punitive damages in excess of two million dollars ($2,000,000.00) according to proof;

(e) costs of suit; and

(f) Such other relief as the court finds is justified by proof.

Dated: January 25, 2015.  Respectfully Submitted,

MARK W. EDELSTEIN
LAW OFFICES OF MARK W. EDELSTEIN

By: */s/ Mark W. Edelstein*
    Mark W. Edelstein

Counsel for Plaintiff, Clyde DeWitt